UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CRANDALL HENDERSON,

                Plaintiff,

v.                                         Case No. 22-CV-309

C. WHITMAN,

                Defendant.

---

## DECISION AND ORDER

Plaintiff Crandall Henderson, who is representing himself and confined at Stanley Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Henderson was allowed to proceed on a claim under the Eighth Amendment for deliberate indifference to his medical needs and a related state law claim alleging that the defendant, Health Services Manager Candace Whitman, did not respond to his complaints of symptoms stemming from drinking contaminated water. Whitman filed a motion for summary judgment. (ECF No. 51.) They parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 36, 39.)

## PRELIMINARY MATTERS

Whitman argues that Henderson failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to her motion for summary judgment when he did not provide proper evidence in support of his response materials. (ECF No. 68 at 2.) District courts are entitled to construe *pro se* submissions leniently and

may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Henderson's response materials do not formally conform with the rules, his response contains sufficient facts to allow the court to rule on Whitman's summary judgment motion. The court notes that Henderson submitted several exhibits that appear to be legitimate. Henderson also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Henderson's submissions where appropriate in deciding Whitman's motion.

**FACTS**

Henderson was incarcerated at Fox Lake Correctional Institution (FLCI) from January 9, 2019[1] until January 21, 2021. (ECF No. 53, ¶ 1.) At all times relevant Whitman was the Health Services Manager at FLCI, where her primary responsibilities were to oversee and organize administrative support for the Health Services Unit (HSU). (*Id.*, ¶¶ 2-4.) On approximately February 28, 2019, Henderson submitted a Health Service Request (HSR) stating, "I believe the water is making me sick. I'm feeling really different breaking out on my skin headaches rashes on skin

---

[1] In his complaint Henderson states that he transferred to FLCI on January 9, 2018, and that the relevant events occurred in 2018. (ECF No. 1 at 3.) However, Henderson's external movement history, submitted by Whitman, shows that he transferred on January 9, 2019. (ECF No. 55-1 at 3.) Additionally, his medical records indicate that the relevant events occurred in 2019. (ECF No. 54-1.)

feeling terrible after drinking water." (*Id.*, ¶ 10.) Non-defendant Registered Nurse Bergmann (no first name in the record) responded to Henderson's request by providing him with a memo (signed by Whitman) explaining that the water at FLCI is safe and there is no evidence that drinking the water will cause health issues. (*Id.*, ¶ 11; ECF No. 54-1 at 1-2.)

The court notes that in 2015 FLCI had issues with water quality--specifically, levels of lead and copper--and since then FLCI worked to correct those issues. (*See* ECF No. 20 at 4.) Additionally, there have been a number of cases about FLCI's water issues in the Federal District Court for the Western District of Wisconsin and, after consolidating them, District Judge James D. Peterson determined that the contaminated water did not create sufficiently serious conditions to rise to the level of an Eighth Amendment violation. (*Id.*; *See Stapleton v. Carr*, 438 F. Supp. 3d 925, 942 (W.D. Wis. 2020)). Whitman created the memo as an educational tool to explain to prisoners the actions FLCI takes to ensure water quality. (ECF No. 53, ¶ 11.) As Health Services Manager, Whitman participates in meetings with the Warden's office where water issues are discussed. (*Id.*)

On March 10, 2019, Henderson was seen in the Health Services Unit (HSU) regarding "dry skin, water safety concerns, [and] headaches." (ECF No. 53, ¶¶ 21-22; ECF No. 54-1 at 8.) Non-defendant nurse Kristine A. DeYoung examined Henderson and gave him remedies for his dry skin, including lotion and ointment. (ECF No. 54-1 at 8.) At the appointment Henderson asked for a blood test for lead. (*Id.*) Nurse DeYoung gave him a memo regarding the water quality and a memo explaining when

3

testing is warranted, including what symptoms necessitate testing. (*Id.*) She noted that dry skin is not a symptom that necessitates testing. (*Id.*) She also told him to keep monitoring his symptoms and report any symptoms to HSU. (*Id.*) Nurse DeYoung determined that Henderson did not need to be seen by an advanced care provider (either a nurse practitioner or a doctor) at that time. (*Id.*; ECF No. 53, ¶ 23.)

On approximately March 15, 2019, Whitman received an interview/information request from Henderson wherein Henderson wrote that he had asked to be seen in the HSU for side effects from the water at FLCI. (ECF No. 53, ¶ 15.) Henderson stated that he felt sick and that his skin condition was worsening. (*Id.*) Whitman wrote a memo in response, explaining that his request for blood testing at his March 10 appointment was denied because there was no "clinical evidence that supports the need." (ECF No. 54-1 at 4.) Whitman reiterated that there was no evidence that the drinking water causes health issues, and there was no reason to provide bottled water to prisoners. (*Id.*)

There is no evidence in the record that Henderson sought additional medical care for his concerns about water quality after the March 15 interview/information request. Henderson states that he should have been seen again in the HSU after he submitted his interview/information request. (ECF No. 67 at 3.) He further states that he submitted additional HSRs but they were ignored. (*Id.*) However, he does not provide evidence of these HSRs, and his medical records do not indicate that he submitted any additionally HSRs related to his concerns about the water. Henderson also asserts that Whitman prevented him from seeing an advance care provider, but

4

he does not explain when this allegedly occurred or how she prevented him from doing so. (*Id.* at 5.) He also denies being examined by Nurse DeYoung, but his medical records show that he was. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on

5

the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Henderson claims that Whitman violated his Eighth Amendment rights because she failed to appropriately address his concerns and symptoms from consuming FLCI's drinking water. A prison official violates the Eighth Amendment when she is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate this, "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The parties dispute whether Henderson's headaches and skin issues are an objectively serious medical condition. However, even taking the facts in a light most favorable to Henderson and finding that the conditions are objectively serious, no

reasonable jury could conclude that Whitman was deliberately indifferent to his complaints of symptoms from drinking the water.

To show that a prison official was subjectively and deliberately indifferent a plaintiff must demonstrate "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). Henderson was allowed to proceed on a claim against Whitman because he alleged that she failed to respond to his communications regarding the health issues he was experiencing and his concerns about water quality. (ECF No. 20 at 6.) But no reasonable factfinder could conclude that Whitman (or her staff on her behalf) failed to respond to Henderson's complaints.

The record demonstrates that Henderson first complained about symptoms from the water on February 28, 2019. Ten days later, on March 10, 2019, he was examined by Nurse DeYoung in the HSU for his symptoms. While there was a slight delay between the time Henderson complained and when he was seen by Nurse DeYoung, delaying treatment constitutes deliberate indifference only "if such delay 'exacerbated the injury or unnecessarily prolonged an inmate's pain.'" *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *McGowen v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The delay must also be "inexplicable." *Petties*, 836 F.3d at 730. The Seventh Circuit Court of Appeals has noted that "delays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

7

Henderson presents no evidence that the ten-day period between him complaining and when he was seen by Nurse DeYoung exacerbated his condition or that the "delay" was otherwise unreasonable. Although Henderson insists he was never examined by Nurse DeYoung, his medical records directly contradict this assertion. "Where opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 327, 376 (2007).

Nurse DeYoung determined that Henderson's symptoms did not warrant testing or escalation to an advanced care provider. For this to rise to the level of a constitutional violation Henderson must demonstrate that "the decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the [nurse] was actually exercising [her] professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Henderson did not demonstrate this and was not allowed to proceed on a claim against Nurse DeYoung. Whitman, as the HSU administrator, was entitled to rely on the decisions made by her staff. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.").

On March 15, 2019, Henderson wrote an information/interview request, still complaining of symptoms. The record indicates that Whitman promptly responded to him in writing, explaining why he would not be receiving a blood test and reassuring him about the water's quality. Henderson asserts that he submitted additional HSRs

about his symptoms but they were ignored. However, he offers no evidence of these HSRs, such as the date and time he submitted them and what their contents were. Similarly, he states that Whitman prevented him from seeing an advanced care provider, but again presents no evidence explaining how or when she did so.

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)). Henderson does not demonstrate that Whitman failed to respond promptly to his medical needs. As such, the court grants summary judgment in Whitman's favor.

## CONCLUSION

For the foregoing reasons Whitman's motion for summary judgment on the Eighth Amendment deliberate indifference claim is granted and that claim is dismissed. Whitman also argued that she was entitled to qualified immunity, but because the court granted summary judgment in her favor on the merits it does not need to address the qualified immunity arguments.

At screening, the court exercised supplemental jurisdiction over Henderson's Wisconsin state law claim. Now that the court has granted summary judgment in favor of Whitman and dismissed the federal claim, the court declines to continue to

9

exercise that jurisdiction. *See* 28 U.S.C. §1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015). Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Whitman's motion for summary judgment (ECF No. 51) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 31st day of August, 2023.

BY THE COURT

_William E. Duffin_

WILLIAM E. DUFFIN
United States Magistrate Judge
